

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JORGE NIETO, and MARIO GARCIA,
Individually, and On Behalf of
All Others Similarly Situated,
and as Class Representatives,

               Plaintiffs,

        v.

2249 CORP. and 22 E. 49th St.
FOOD CORP., jointly d/b/a
LIBERTY DELI & PIZZA, JESSICA
GUPTA, SANJIV CHAND, and SAMY
ELFOULLY, jointly and
severally,

               Defendants.

16 Civ. 7947 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Plaintiffs Jorge Nieto ("Nieto") and Mario Garcia ("Garcia") bring this action for damages against their former employer(s). (See Collective Action Complaint ("Compl."), dated Oct. 11, 2016 [dkt. no. 1], ¶¶ 1-2, 8, 10-18.) Plaintiffs seek to recover minimum wages and overtime premium pay pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law §§ 650 et seq. ("NYLL"). (Compl. ¶¶ 1-2.) Plaintiffs also bring claims against Defendants for failure to provide wage notices and wage statements pursuant to the NYLL and related regulations. (Id. ¶ 1.) Plaintiffs bring their NYLL claims on behalf of themselves as individual Plaintiffs. (Id. ¶ 2.) Plaintiffs bring their FLSA claims on

1

behalf of themselves and other similarly situated employees of
Defendants.   (Id.)

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C.
§ 4, and Rule 12(b)(6) of the Federal Rules of Civil Procedure,
Defendants move to compel arbitration and to dismiss Plaintiffs'
claims.   In the alternative, Defendants move to stay the instant
action pending arbitration.   In response, Plaintiffs "request
that the Court hold a trial over the validity of the signatures
on the Arbitration Agreements, which [P]laintiffs believe are
forgeries."   (See Pls.' Opp. to Defs.' Mot. to Compel
Arbitration ("Opp. Br."), dated July 6, 2017 [dkt. no. 19].)

For the reasons discussed herein, Defendants' motions are
DENIED.   Furthermore, Plaintiffs' request is GRANTED insofar as
the Court "shall proceed summarily" to a trial addressing the
"making of the arbitration agreement[s]."   9 U.S.C. § 4.

I.   **BACKGROUND**

a. **Procedural Background**

On October 11, 2016, Plaintiffs filed the Compl. on behalf
of themselves and other similarly situated employees.   (See
Compl.)   On July 6, 2017, Plaintiffs filed their Opp. Br.   (see
Opp. Br.) together with two affidavits and one affirmation in
support.   (See Aff. of Jorge Nieto ("Nieto Aff."), dated July 6,
2017 [dkt. no. 21]; Aff. of Mario Garcia ("Garcia Aff."), dated

2

July 6, 2017 [dkt. no. 22]; Aff. of Maria L. Chickedantz ("Chickedantz Aff."), dated July 6, 2017 [dkt. no. 20].) On August 17, 2017, Defendants refiled[1] their Memorandum of Law in Support of Defendants Motion to Compel Arbitration, Motion to Dismiss, or in the Alternative to Stay the Proceedings Until the Completion of Arbitration ("Mot. to Compel"). (See Mot. to Compel, dated Aug. 17, 2017 [dkt. no. 26].) Defendants also filed an accompanying Affidavit of Jessie Gupta in Support of Defendants' Motion to Compel Arbitration and Dismiss or Stay Action ("Gupta Aff."). (See Gupta Aff., dated June 15, 2017, Aug. 17, 2017 [dkt. no. 24].)

### b. The Compl.'s Account of the Underlying Facts

At this time, Defendants have not contested the following facts from the Compl.

Defendants 2249 Corp. ("2249 Corp.") and 22 E. 49th Street Food Corp. ("49th St. Food Corp.") jointly own Liberty Deli & Pizza ("Liberty Deli") along with individual Defendants Samy Elfoully ("Elfoully") and Sanjiv Chand ("Chand"). (See Compl.

---

[1] Defendants previously attempted to file a motion to compel Plaintiffs to arbitrate on June 15, 2017. (See [dkt. no. 18].) However, due to the incorrect formatting of the June 15 docket entry, the Court deemed that filing deficient. (See [dkt. no. 18].) (docket entry noting "filing error").

¶¶ 10-13, 29-33.)  Chand is also the CEO of 2249 Corp., and
Elfoully is the CEO of 49th St. Food Corp.  (Id. ¶¶ 12-13.)

Liberty Deli is a chain-restaurant deli with more than ten
locations operating in the New York metropolitan area.  (Id.
¶ 19.)  Both Plaintiffs worked for Defendants at the 22 E. 49th
Street Liberty Deli location (the "49th St. Location") in
Manhattan, New York.  (Id. ¶ 8.)  The 49th St. Location is also
the principal place of business for both 2249 Corp. and 49th St.
Food Corp.  (Id. ¶¶ 10-11.)

During the relevant time period, Elfoully and Chand
together helped manage and operate Liberty Deli and
"participated in the day-to-day operations of the corporate
defendants."  (Id. ¶¶ 12-13, 16.)  During that same period,
Defendant Jessica Gupta (also known as Jessie Gupta) ("Gupta")
worked for Liberty Deli as manager, book keeper, and accountant.
(Id. ¶ 14; see also Gupta Aff. ¶ 3.)  Elfoully, Chand, and Gupta
also had the power to hire, fire, and supervise employees, set
work schedules, determine employment terms and conditions,
determine rates and methods of pay, and set policies and
procedures with respect to payroll.  (Id. ¶ 36.)

From 2002 until approximately March 3, 2016, Plaintiff
Nieto worked as an hourly deli worker at the 49th St. Location.
(Id. ¶ 37.)  Nieto was responsible for food and beverage

4

preparation, deliveries, and cleaning.  (Id.)  Nieto worked approximately 55 hours per week for which he was paid a flat rate of $400 per week.  (Id. ¶ 38.)  Defendants issued Nieto paystubs that indicated that he was paid an hourly rate of $10 per hour and worked 40 each week.  (Id. ¶ 39.)  The same paystubs also included time records reflecting that Nieto worked an average of 55 hours per week.  (Id.)

From 2004 until approximately March 15, 2016, Plaintiff Garcia worked as an hourly deli worker at the 49th St. Location where he was responsible for food and pizza preparation.  (Id. ¶ 40.)  Garcia worked approximately 48 hours per week for which he was paid $270 per week.  (Id. ¶ 41.)  At no point did Defendants provide Garcia with statements indicating his wages. (Id. ¶ 42.)

During this same period at issue, Defendants employed other deli workers and hourly employees who also worked in excess of 40 hours per week.  (Id. ¶ 44.)  Defendants did not maintain a standardized timekeeping system.  (Id. ¶ 43.)  Accordingly, Defendants were unable to record accurately the hours that Nieto, Garcia, and other employees worked.  (Id.)  As a result, Defendants failed to pay workers a minimum wage for all hours worked and overtime premiums for hours worked in excess of 40 hours per week.  (Id. ¶¶ 43-44.)  Additionally, Defendants never

provided Nieto and Garcia with wage notices either at the time of hire or by February 1 of each year. (Id. ¶ 45.)

### c. Facts Regarding the Existence of Arbitration Agreements

Plaintiffs and Defendants dispute sharply whether Plaintiffs signed any arbitration agreements or otherwise agreed to arbitrate.

### i. Defendants' Account of the Facts

Defendants claim that Plaintiffs individually agreed to arbitrate any disputes "relating to or arising out of [their] employment" and that each signed written agreements to that effect. (See Mot. to Compel at 3; see also Gupta Aff.; Gupta Aff. Ex. 1 at 1, 3.) Defendants claim that, on January 28, 2014, Gupta provided Garcia with two copies, one in English and one in Spanish, of a "Consent to Mandatory Arbitration." (Gupta Aff. ¶ 4.) Defendants assert that Gupta then explained to Garcia, in English, the contents of the arbitration agreement and that a third person contemporaneously translated Gupta's explanation into Spanish. (Id.) Finally, Defendants claim that Garcia confirmed that he understood Gupta's explanation and immediately signed the English version of the arbitration agreement in front of Gupta. (Id.)

Defendants describe Nieto's execution of the arbitration agreement in similar terms.  On approximately January 28, 2014, Gupta provided Nieto with two copies, one in English and one in Spanish, of an identical "Consent to Mandatory Arbitration." (Id. ¶ 5.)  Defendants assert that Gupta explained to Nieto, in English, the contents of the arbitration agreement and that a third person contemporaneously translated Gupta's explanation into Spanish.  (Id.)  Defendants claim that Nieto confirmed that he understood Gupta's explanation and took home both the English and Spanish copies of the arbitration agreement.  (Id.) Finally, Defendants claim that, on February 28, 2014, Nieto brought his copy of the agreement to Gupta and signed the English version of the arbitration agreement in front of her. (Id.)

Defendants claim that they have submitted true copies of each of these signed agreements (collectively the "Arbitration Agreements" or "Agreements") as Exhibit 1 to the Gupta Aff. (See Gupta Aff. ¶ 6; see also Gupta Aff. Ex. 1.)

The Arbitration Agreements, as attached to the Gupta Aff., state that the signatory agrees to the arbitration procedure laid out in the "Model Employment Arbitration Rules of the American Arbitration Association" ("AAA Rules") as "the exclusive means of resolving disputes relating to or arising out

of [the signatory's] employment."   (Gupta Aff. Ex. 1 at 1, 3.)
Furthermore, Defendants claim that, by incorporating the AAA
Rules, the Arbitration Agreements thereby "delegate[] issues of
arbitrability to an arbitrator."   (Mot. to Compel at 5.)
Plaintiffs do not explicitly dispute Defendants' claim that the
Arbitration Agreements, by their terms, delegate arbitrability
issues to an arbitrator.   (See generally Opp. Br.)   Finally, the
Arbitration Agreements state that Liberty Deli "offers this
policy in consideration of [Plaintiffs'] continued employment
with [Liberty Deli]."   (Gupta Aff. Ex. 1 at 1, 3.)

## ii. **Plaintiffs' Account of the Facts**

Plaintiffs claim that they have never seen the Arbitration
Agreements before, that they did not sign the Arbitration
Agreements, and that they believe the signatures in the
Arbitration Agreements are forgeries.   (Opp. Mot. at 1; Nieto
Aff. ¶ 3; Garcia Aff. ¶ 3.)   Plaintiffs claim that at no point
during their employment did anyone "ever translate[] or
interpret[] anything" for them.   (Nieto Aff. ¶ 4; Garcia Aff.
¶ 4.)   Plaintiffs also claim that at no point during their
employment did Gupta ask them to sign anything.   (Nieto Aff.
¶ 5; Garcia Aff. ¶ 4.)   Finally, Garcia asserts his belief that
"defendants copied [his] signature from another document and
pasted it onto the arbitration agreement."   (Garcia Aff. ¶ 3.)

8

Subsequently, Plaintiffs' counsel contacted Defendants' counsel to inform him of Plaintiffs' belief that the Arbitration Agreements were forged.[2]  (Opp. Br. at 2.)  Plaintiffs' counsel also asked to inspect the original Arbitration Agreements. (Id.)  Defendants still have not allowed Plaintiffs' counsel to inspect the original Arbitration Agreements or confirmed whether they still possess the original documents.  (Id.)

## II.   LEGAL STANDARD

Although Defendants' motion is styled as a motion to dismiss, it also seeks an order compelling arbitration.  (See Mot. to Compel.)  The Court will therefore construe Defendants' motion to dismiss as a motion to compel arbitration because of Plaintiffs' express intent to pursue arbitration.  See 75-07 Food Corp. v. Trs. of United Food & Commercial Workers Local 342 Health Care Fund, No. 13-CV-5681, 2014 U.S. Dist. LEXIS 23004, at *10 (E.D.N.Y. Feb. 24, 2014); see also Wabtec Corp. v. Faiveley Transp. Malmo AB, 525 F.3d 135, 139-40 (2d Cir. 2008) (discussing that a motion to dismiss may be construed as a motion to compel arbitration where movant requests district court to compel arbitration).

---

[2] The Court does not rely on hearsay in Plaintiffs' counsel's affidavit in determining the instant motion, but finds instructive Defendants' counsel's failure to make available the original Arbitration Agreements.

District courts should apply the summary judgment standard
when faced with the question of whether to stay or compel
arbitration.  Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir.
2003).  Summary judgment is warranted where the "pleadings . . .
together with the affidavits [and exhibits], if any, show that
there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(c).  "An alleged factual dispute regarding
immaterial or minor facts between the parties will not defeat
. . . summary judgment."  Powell v. Nat'l Bd. of Med. Exam'rs,
364 F.3d 79, 84 (2d Cir. 2004) (citation omitted).  "A party
resisting arbitration . . . must show that, if proven, [its]
allegations would relieve any obligation to arbitrate, and [it]
must produce some evidence to substantiate [its] factual
allegations."  Doctor's Assocs., Inc. v. Distajo, 944 F. Supp.
1010, 1014 (D. Conn. 1996), aff'd, 107 F.3d 126 (2d Cir. 1997),
cert. denied, 522 U.S. 948 (1997) (internal citations and
quotation marks omitted).  Specifically, "[i]f there is an issue
of fact as to the making of the agreement for arbitration, then
a trial is necessary" before a court can determine
arbitrability.  Bensadoun, 316 F.3d at 175; cf. Granite Rock Co.
v. Int'l Bhd. of Teamsters, 561 U.S. 287, 298-99, 303-06 (2010)
(reaffirming that disputes regarding the formation of a contract

10

do not trigger the severability rule and must be resolved by a
court, not by an arbitrator).[3]

"'[A]n unequivocal denial that [an] agreement [has] been
made, accompanied by supporting affidavits . . . should be
sufficient to require a [trial]' under 9 U.S.C. § 4." Becker v.
DPC Acquisition Corp., No. 00-Civ.-1035, 2002 U.S. Dist. LEXIS
9605, at *14 (S.D.N.Y. May 30, 2002) (quoting Par-Knit Mills,
Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 55 (3d Cir. 1980)
(citing Interocean Shipping Co. v. Nat'l Shipping & Trading
Corp., 462 F.2d 673 (2d Cir. 1972))). Where such a trial is
required, the party alleged to be in default of the arbitration
agreement may "demand a jury trial of such issue." 9 U.S.C.
§ 4.

## III. DISCUSSION

By their Affidavits, their Opp. Br., and the Affirmation of
Counsel, Plaintiffs have created a genuine "issue of fact as to
the making of the agreement[s] for arbitration." Bensadoun, 316
F.3d at 175. Furthermore, Plaintiffs have accompanied their
"unequivocal denial that . . . agreement[s] [have] been made"

---

[3] Defendants' reliance on Rent-A-Center, W., Inc. v. Jackson, 561
U.S. 63 (2010) is unavailing. (See Mot. to Compel at 4.)
Granite Rock, decided after Rent-A-Center, controls the type of
formation issue the Plaintiffs raise. Compare Rent-A-Center,
561 U.S. 63, with Granite Rock, 561 U.S. at 298-99, 303-06.

with "some evidence to substantiate [their] factual

allegations." Becker, No. 00-Civ.-1035, 2002 U.S. Dist. LEXIS

9605, at *14 (quoting Par-Knit, 636 F.2d at 55 (citing

Interocean, 462 F.2d 673)); Distajo, 944 F. Supp. at 1014.

While courts have found that even one affidavit may be

sufficient, here Plaintiffs provide two supporting affidavits

that raise a number of circumstances, such as the translator's

failure to sign as a witness, that are sufficient to pose issues

of fact. See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.,

263 F.3d 26, 32-33 (2d Cir. 2001) (finding that one affidavit

provided "some evidence" so as to warrant a trial under 9 U.S.C.

§ 4); Ministry of Indus. & Trade, The Hashemite Kingdom of

Jordan v. S. Kasmas & Bros., No. 01-civ.-3575, 2001 WL 1035133,

at *2-*3 (S.D.N.Y. Sept. 7, 2001);(Nieto Aff. ¶¶ 3-5; Garcia

Aff. ¶¶ 3-4; see also Opp. Br. at 2-3.)  Accordingly, Plaintiffs

have provided the required evidence to place the execution of

the Arbitration Agreements at issue.

Furthermore, Defendants have not provided the type or

quality of evidence sufficient to undermine Plaintiffs'

affidavits.  See, e.g., Interbras, 663 F.2d 4, rev'd, 509 F.

Supp. 1067.  Interbras Cayman Co. v. Orient Victory Shipping Co.

likewise involved a party's submission of counter-evidence to

persuade the court that an arbitration agreement existed.  Id.

In Interbras, Interbras petitioned the court for an order

designating an arbitrator for Respondent Orient, which had
refused to participate in Interbras's arbitration proceedings
against it.  Interbras, 509 F. Supp. at 1068.  The district
court found that a third-party shipping company, which had
signed a charter agreement involving an arbitration clause, was
acting as the undisclosed agent of sub-charterer, Interbras.
Interbras, 663 F.2d at 5-6.  Accordingly, based on agency
principles, the court found that Orient was obliged to arbitrate
with Interbras as if Interbras itself had signed the original
arbitration agreement.  Id. at 5-6.  In reversing the district
court, the Court of Appeals held that Interbras's evidentiary
submissions, which included affidavits and a telex that tended
to establish an agency relationship, was insufficient to negate
Orient's contrary evidence that no such agency relationship
existed.  Id. at 7.  The court noted that Orient's evidence[4] was
"sufficient to raise a 'genuine' issue of fact" particularly "in
view of Orient's charge that the telex is factually incorrect
and self-serving."  Id.  In the instant case, the Gupta Aff.
likewise fails adequately to refute Plaintiffs' counter-
narrative and observations that contradict the Gupta Aff.

---

[4] Neither the Court of Appeals nor the District Court detailed
the substance of Orient's submission.  However, in considering
the issue of a party's proffered evidence in opposition to a
motion to compel arbitration, the Court finds Interbras
instructive.

(Nieto Aff. ¶¶ 3-5; Garcia Aff. ¶¶ 3-4; see also Opp. Br. at 2-3.)   At a minimum, Plaintiffs have alleged that the Arbitration Agreements and the Gupta Aff. are "factually incorrect and self-serving" and have also supported those allegations with their own evidence.   (Id.)   Accordingly, Plaintiffs have sufficiently put at issue the making of the Arbitration Agreements, and the Court therefore "shall proceed summarily" to a trial to address this issue.   9 U.S.C. § 4.

For the foregoing reasons, and because the making of an arbitration agreement is a non-arbitrable issue, Defendants have not demonstrated any legitimate reason to stay the instant action pending resolution.   See 9 U.S.C. § 4; see also, e.g., Dedon GmbH v. Janus Et Cie, No. 10-Civ.-04541, 2010 U.S. Dist. LEXIS 112131, at *28 (S.D.N.Y. Oct. 19, 2010) (denying motion to stay proceedings pending resolution of arbitration because, despite ongoing arbitration proceedings and "significant" comity reasons to respect an international arbitrator's findings, "the existence of an agreement to arbitrate" is "ultimately a non-arbitrable issue").

## IV.   CONCLUSION:

For the foregoing reasons, Defendants' motion to dismiss and motion to compel arbitration or stay the instant proceedings pending arbitration are hereby DENIED.

The parties are directed to file a joint schedule on or before April 2, 2018 which addresses:

(1) Whether they intend to pursue any discovery with respect to the subject matter to be tried, and if so, the proposed date by which that discovery will be completed;

(2) The proposed date by which they intend to submit a joint pretrial order;

(3) The proposed date by which they will be ready for trial.

(4) Plaintiffs are also directed to file either a demand for a jury trial or a waiver thereof on or before April 16, 2018.

SO ORDERED.

Dated:  New York, New York
        March 22, 2018

_Loretta A. Presley_
LORETTA A. PRESKA
Senior United States District Judge